STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    FAX: (415) 436-7234
    Evan.Mateer@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:21-MJ-71435-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN** |
| v. | |
| GREGORY BELL, | |
| Defendant. | |

### INTRODUCTION

Gregory Bell does not just possess guns – he uses them. This case arises out of a May 6, 2019 shootout in which Mr. Bell fired a weapon. Mr. Bell was later arrested, and now stands charged by Complaint with violation of 18 U.S.C. § 922(g)(1) – Felon in Possession for Firearms and Ammunition. But Mr. Bell's dangerous criminal conduct does not stop there. He continues to be involved in the possession and use of firearms, and evidence indicates his criminal activity is even more extensive than that. Mr. Bell is a danger to the community and a flight risk. The Court should order that he be detained pending trial.

# BACKGROUND

## I. OFFENSE CONDUCT

On May 6, 2019 Gregory Bell took part in a shootout in San Francisco. SFPD was alerted to the shootout by a "ShotSpotter" activation around Egbert Avenue and Ingalls Street. Officers were dispatched to investigate. While at the intersection of Yosemite Avenue and Ingalls Street, witnesses told the officers that they had seen a passenger of a newer model white Jeep vehicle firing rounds into the air. Officers continued their investigation and located the white Jeep and another dark colored sedan. The officers observed an unknown individual exit the dark colored sedan and fire seven rounds at the white Jeep. Both vehicles immediately fled the scene. Because the officers had just witnessed an individual fire from the dark sedan, they attempted a pursuit of that vehicle. They were unable to locate it.

The white Jeep, however, was located and stopped a short time later. Because it had very dark windows and officers could not see into the vehicle, the officers opened the rear door. Officers then saw spent shell casings in plain view on the floor of the Jeep and initiated a probable cause search of the vehicle. Officers found four spent .40 caliber shell casings on the floorboards. Continuing their search, officers found what appeared to be bullet damage on the inside of the driver's side door. Closer inspection revealed that there was a hidden compartment inside the driver's side door, behind the automatic window controls. Inside the compartment, officers found two firearms: 1) a Glock 22 .40 caliber semi-automatic handgun fitted with an extended magazine and 2) a Glock 21 .45 caliber semi-automatic handgun fitted with an extended magazine. Officers also found a spent .45 caliber shell casing. The Glock 21 was fitted with a small device known as a "selector switch," which allows the Glock 21 to function as a fully automatic machine gun.

Mr. Bell's hands were tested for gun shot residue. The test returned a positive result, which indicates that Mr. Bell had fired a weapon.[1] Further, DNA evidence provides strong support that Mr. Bell had handled the Glock 22, and supports the conclusion that Mr. Bell had handled the Glock 21. Finally, lab analysis of the shell casings found inside the vehicle indicate that they were fired from the Glock 21

---

[1] Note that examination of gunshot residue from the other passengers in the vehicle also returned positive results. However, DNA analysis provides only "limited support" for the presence of their DNA on either of the weapons recovered from the white Jeep.

and Glock 22 pistols recovered from the vehicle.

On September 9, 2021, Mr. Bell was charged by Complaint with violating 18 U.S.C. § 922(g)(1).

## II.     CRIMINAL HISTORY AND PRIOR CONDUCT

Mr. Bell's criminal activity did not begin – or end – on May 6, 2019.  Mr. Bell is a twice convicted felon – first in 2013 for receipt of stolen property[2] and again in 2014 for burglary in the first degree.[3]  And Mr. Bell has continued to break the law, right until the very day he was arrested.  He is connected to at least two additional shooting incidents.  He travels throughout the country, and while in other jurisdictions has encountered (and fled from) law enforcement and possessed and fired weapons.  Finally, on the day of his arrest, Mr. Bell was in possession in two firearms, including a ghost gun assault pistol with a double drum magazine loaded with 100 rounds.

***Mr. Bell's Glock 21 is connected to shooting incidents on March 24, 2018 and January 16, 2019***

The .45 caliber Glock 21 recovered from Mr. Bell on May 2019 is connected to two other shooting incidents.  First, on March 24, 2018, the Oakland Police Department received a ShotSpotter alert of 37 rounds fired.  Officers responded to the scene and recovered 25 .45 caliber shell casings and 17 7.62 shell casings.  National Integrated Ballistic Information Network ("NIBIN") analysis indicates that the .45 caliber Glock 21 recovered from Mr. Bell is associated with the .45 caliber shell casings recovered by the Oakland Police Department on March 24, 2018.

Mr. Bell's Glock 21 was also connected to a violent shooting incident on January 16, 2019 in San Francisco.  An individual in an SUV drove up next to another vehicle and fired numerous rounds into the vehicle.  Bullets shattered the vehicle's windshield; others missed the vehicle and struck into inhabited residences.  The driver of the target vehicle was struck but suffered only bruising.  SFPD Officers recovered 18 .45 caliber spent shell casings and 10 .40 caliber spent shell casings from the scene of the shooting.  Witnesses described one shooter as the driver, and the description does not match Bell.  However, the presence of two calibers of shell casings indicates the possibility of another shooter.  National Integrated Ballistic Information Network analysis indicates that the .45 caliber Glock 21

---

[2] California Penal Code 496.
[3] California Penal Code 459.

recovered from Mr. Bell is associated with the .45 caliber shell casings recovered on January 16.

*Mr. Bell fled from police on June 22, 2021*

On June 22, 2021, officers with the Roseville Police Department stopped a vehicle at the request of the FBI. The vehicle initially attempted to evade officers, running red lights, and accelerating to 100 mph during the chase. Officers pursued and eventually the vehicle pulled over. Mr. Bell, who was a passenger, exited the vehicle and fled the scene on foot. The vehicle continued to flee but was eventually stopped. Mr. Bell attempted to hide in a CVS store, but was eventually detained by RPD officers.

*In February of 2021 Mr. Bell traveled to Atlanta where he possessed and fired firearms*

When Mr. Bell was detained by RPD he was searched pursuant to a federal search warrant and his cell phone was seized. Video footage on the cell phone shows Mr. Bell at a firing range shooting guns, including a Glock pistol and AK-47 style rifle. Investigators identified the range as Quickshot Indoor Shooting Range in Atlanta, Georgia. Staff at the range confirmed that Mr. Bell had visited and fired weapons at the range on February 22, 2021, and that the weapons he fired were not rented from the range. Location data from Mr. Bell's cell phone confirms that he was in Atlanta before and after the date of the firing range video. In paperwork provided to the firing range, Mr. Bell indicated that he was not a felon. This was a lie. The weapons Mr. Bell illegally possessed and fired in Atlanta are unaccounted for. A still image of Mr. Bell at the range holding an AK-47 style rifle is below.



*On September 24, 2021 Mr. Bell possessed two firearms, including an assault pistol "ghost gun"*

On the morning Mr. Bell was arrested, federal agents executed a search warrant for his person, residence, and his vehicle. Officers found and seized a Glock 21 in a bedroom on top of a bed that looked like it had been slept in. It was loaded with 15 rounds of ammunition. In the same bedroom, officers found and seized large quantities – approximately 40 lbs. – of suspected marijuana stored in clear plastic trash bags. Officers also seized a large amount of ammunition (nearly 200 rounds) in various calibers. The AR-15 style assault pistol was found inside a vehicle parked on the street outside of the residence.[4] It is a privately manufactured "ghost gun" and was fitted with a large "drum" style magazine with a capacity of up to 100 rounds of ammunition. A picture of this weapon is below.



The investigation into Mr. Bell's criminal conduct is ongoing. It remains to be seen if the weapons seized from Mr. Bell on September 24 will be linked to other shootings, like the weapons seized in 2019 were. Several cell phones were also seized from Mr. Bell on September 24. It similarly remains to be seen if the information on these cell phones will reveal additional criminal activity, like the cell phone seized by Roseville Police Department did. However, the evidence available now strongly indicates that Mr. Bell's criminal activity is not limited to the possession of illegal firearms.

---

[4] Note that the vehicle was not registered to Mr. Bell. However, the government has reason to believe it was under the control of Mr. Bell at the time of his arrest.

# ARGUMENT

## I. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where defendant is either a flight risk or a danger to the community; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). While a finding that a defendant is a danger to the community must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In determining whether pretrial detention is appropriate, the court must consider information regarding the nature and circumstances of the charged offense; the weight of the evidence; the danger posed by the defendant to any person or the community; and the history and characteristics of the defendant. 18 U.S.C. § 3142(g).

## II. MR. BELL IS BOTH A DANGER TO THE COMMUNITY AND A FLIGHT RISK

The United States submits that no condition or combination of conditions will protect the public or assure Mr. Bell's appearance at these proceedings should he be released from custody.

### A. The Nature and Circumstances of the Offense Weigh in Favor of Detention

Though Mr. Bell is charged with possession of firearms and ammunition, the circumstances of his possession underscore that Mr. Bell is a danger to the community and require detention. The evidence strongly indicates that Mr. Bell did not just passively possess firearms. To the contrary, on May 6, 2019, Mr. Bell was involved in a shootout in the middle of San Francisco. Witnesses reported seeing an individual shooting a gun from a white Jeep, the same vehicle Mr. Bell was in. Analysis of gunshot residue from Mr. Bell's hands indicates that he fired a weapon that night. Ballistic evidence indicates that shell casings recovered by SFPD had been fired from the Glock 21 recovered from Mr. Bell. And DNA evidence "strongly supports" the conclusion that Mr. Bell had handled that firearm. At the very least, Mr. Bell discharged a firearm multiple times in a crowded city, a grossly negligent and dangerous act. More

likely, given that police observed an individual firing on Mr. Bell's vehicle, is that Mr. Bell fired his weapon that night with the intent to do harm. In either case, Mr. Bell is a danger to the community and should be detained pending trial.

### B. Mr. Bell's Criminal History and Prior Conduct Demonstrate the Danger that he Poses

Mr. Bell's recent prior conduct indicates that he is and has been continuously involved in criminal activity, including the possession and use of firearms. There is no reason to think that Mr. Bell will cease to be a danger because of any condition the Court can impose.

First, the search executed on Mr. Bell's residence on the day of his arrest shows that his criminal conduct is ongoing and is substantial scope. Mr. Bell was again illegally in possession of two firearms. One is a particularly dangerous AR-15 style assault pistol. It is an untraceable ghost gun and was fitted with a magazine capable of holding *100 rounds of ammunition*. The other firearm – a loaded Glock 21 handgun – is notable for the circumstances in which it was found. Mr. Bell had the loaded firearm in bed, in a room along with trash bags full of suspected marijuana. In total, approximately forty pounds of suspected marijuana were recovered from the residence. Though the investigation is ongoing (and therefore may turn up yet more criminal activity), the evidence indicates at least that Mr. Bell is involved in a broader range of criminal activities than merely possessing firearms. And these criminal activities – the combination of drug distribution and firearms possession – are inherently dangerous and are drivers of the plague of gun violence sweeping the bay area. *See* San Francisco Police Department and California Partnership for Safer Communities, Understanding Serious Violence in San Francisco 2017-2020, Executive Summary (2020) at 19.[5]

May 6, 2019 is also not the first or only time that Mr. Bell has fired a weapon. The same Glock 21 seized from Mr. Bell, and which he stands charged for illegally possessing, has been associated with two other shooting incidents in the Bay Area. One of these shooting – on January 16 – was particularly violent, involved dozens of rounds being fired, and easily could have ended in someone being killed.

---

[5] Available at https://sfgov.org/policecommission//sites/default/files/Documents/PoliceCommission/PoliceCommission031021-CPSC%20SFPD_ProbAnalysisExecSummary.pdf.

More recently, Mr. Bell is on video in February of 2021 firing weapons at a shooting range in Atlanta. Though on its own a trip to the shooting range may seem innocuous, in these circumstances it demonstrates Mr. Bell's danger because he is known to possess firearms in order to *use them*.

Nor is there any reason to think that conditions of bail can adequately protect the public. Mr. Bell's offense is not an isolated incident but part of an ongoing pattern of criminal, often violent, conduct. There is great risk that this criminal conduct will continue on release. Because Mr. Bell's history demonstrates his danger to the community and that no conditions will mitigate this danger, he should be detained.

### C. The Weight of the Evidence Against Mr. Bell is Overwhelming

Mr. Bell is a flight risk for two reasons: he is known to travel widely throughout the country, and he is known to run from law enforcement. Cellular call location data indicates that between January and June 2021, Bell was in North Carolina, South Carolina, Colorado, Texas, New Mexico, Georgia, Florida, Nevada, and Illinois. He was in Georgia alone several times in February and April. The evidence indicates that if Mr. Bell chooses to flee, he would have no problem doing so. And Mr. Bell has fled from law enforcement before. With no pending charges, Mr. Bell fled from the Roseville police on June 22, 2021. With more to lose, there is a substantial risk that Mr. Bell chooses to flee again.

And Mr. Bell does have a lot to lose in this case – he faces overwhelming evidence that he unlawfully possessed firearms and ammunition on May 6, 2021. The firearms were found in close proximity to Mr. Bell. His DNA is on both guns. His hands tested positive for gun shot residue. Nor is Mr. Bell's exposure limited to this one charge. The weapons and narcotics discovered with Mr. Bell when he was arrested could well lead to additional charges, and so substantial additional legal exposure. While the weight of the evidence factor is the least important, the Court is still "require[d]" to consider it, and it can help to establish the dangerousness of the defendant. *United States* v. *Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). Likewise, overwhelming evidence of the defendant's guilt "makes it more likely that he will flee," since the defendant has less incentive to litigate the case. *United States* v. *Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991). Faced with this weight of evidence and

likely exposure, there is clear evidence that Mr. Bell is a risk to do what he has done before and flee. This, combined with his danger to the community, requires that Mr. Bell be detained pending trial.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to order Mr. Bell detained pending trial.

DATED: September 29, 2021                                      Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney


  ___/s/ Evan M. Mateer_____
EVAN M. MATEER
Special Assistant United States Attorney

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                      9
3:21-MJ-71435-MAG